# RUTHERFORD ET AL. v. THE LUCERNE CANAL AND POWER COMPANY ET AL.

Water and Water Rights—Right of Way for Irrigating Ditch—Abandonment of Water Right—Equity—Injunction—Costs.

1. Although plaintiffs were entitled to a right of way in controversy for an irrigating ditch, and their failure to convey water to their lands below the points of conflict was due to the unauthorized acts of defendant in constructing its ditch along such right of way, plaintiffs' subsequent abandonment of all their lands below the points of conflict, and their relinquishment of such lands to the United States Government, amounted to an abandonment of their appropriation of water for the irrigation of such lands, and of the right of way for the conveyance of water to them; and they are not entitled to an injunction to prevent defendant's use of the abandoned right of way.

2. If plaintiffs suffered any injury through the acts of defendant in constructing its ditch upon the controverted right of way, and thereby compelling an abandonment by plaintiffs of their lands below the points of conflict and of their water right for the irrigation thereof, an action for damages would be a complete and adequate remedy, as the injury was complete.

3. Plaintiffs having abandoned their lands and appurtenant water right, neither an injunction against the defendant, nor a restoration to plaintiffs of the disputed right of way, would afford them any relief, as it would not restore either their lands or water right.

4. The subsequent acquisition of other lands, in the absence of proof that the same was contemplated at the time of the original appropriation, cannot be held to restore the abandoned appropriation or right of way.

5. The District Court being authorized by statute to award and tax costs and apportion them between the parties as it may adjudge to be right and equitable, its order in an injunction suit that the parties each pay their own costs will not be interfered with in the absence of an abuse of discretion.

6. *Held,* that a refusal to award costs to the defendant who prevailed in the case was not such an abuse of discretion as to justify interference by the appellate court.

[Decided February 18, 1904.]                (75 Pac., 445.)

Error to the District Court, Laramie County, Hon. Richard H. Scott, Judge.

This was an action for an injunction brought by Alexander Rutherford, Sarah Ann Rutherford, Nettie Rutherford, Jennie Rutherford and Sarah Rutherford against The Lucerne Canal and Power Company, a corporation, and D. A. Wucherer, as Water Commissioner, to restrain the use by defendants of any water from the North Platte River, by means of the Lucerne Canal, and the possession by defendant company of a certain right of way at alleged points of conflict between the irrigating ditches of the plaintiffs and the defendant company. The District Court made special findings of fact and conclusions of law, and adjudged that the plaintiffs were not entitled to an injunction. The

plaintiffs prosecuted error, complaining principally· that the court erred in not awarding the relief prayed for.

*W. R. Stoll,* for plaintiffs in error.·  ·

An injunction lies to restrain repeated trespasses; it is necessary only to show a rightful possession of the property, and an interference by the continuous trespasses of another. The remedy at law to be available so as to defeat injunction must be as full and complete to every intent as the remedy by injunction. (Boyce v. Grundy, 3 Pet., 210.) It is not necessary to show insolvency where the acts complained of are continuous trespasses, nor is an allegation required that adequate damages could not be obtained. (Rakes v. Rustin (Va.), 22 S. E., 498; McGregor v. Min. Co., 14 Utah, 47; 89 Fed., 769; Halpin v. McCune, 78 N. W., 210 (Ia.); Lembeck v. Nye (O.), 24 N. E., 690; Kellogg v. King, 114 Cal., 378.) The equity doctrine preventing multiplicity of suits applies to numerous ·suits against the same party, as well as to separate suits against numerous parties. (Barbee v. Shannon (I. T.), 40 S. W., 584; Campbell v. Seaman, 63 N. Y., 568; 1 Pom. Eq. Jur., Secs. 245, 250, 252; 1 High on Inj., Secs. 12, 700; Galway v. Ry. Co., 128 N. Y., 132.) Repeated suits for damages are permitted for continuous trespasses. (Uline v. R. R. Co., 101 N. Y., 98; Tallman v. R. R. Co., 121 id., 119; Galway v. Ry. Co., supra; 2 Beach on Inj., Sec. 1146.) The ground of the right to injunction in case of continuous trespasses is the inadequacy of the legal remedy. In the case at bar, the right follows from the continuous trespass and because the trespass essentially destroys the substance of the estate. (2 Pom. Eq. Jur., Sec. 1357; 1 High Inj., Secs. 697-738; 2 Story's Eq. Jur., 928, 929; 2 Beach Inj., Sec. 1186; Freehold v. Gallegos, 89 Fed., 769; Tallman v. R. R. Co., 121 N. Y., 119; Ry. Co. v. Cunningham, 89 Fed., 594; Halpin v. McCune (Ia.), 78 N. W., 210; Peterson v. Hopewell (Neb.), 76 N. W., 451; Lembeck ·v. Nye (O.). 24 N. E., 686; Wheelock v. Norman (N. Y.), 15 N. E., 67; Coats-

worth v. R. R. Co., 156 N. Y., 451; Eno v. Christ, 54 N. Y. Supp., 400; Miller v. Wills, 95 Va., 337; King v. Campbell, 85 Fed., 814; King v. Stuart, 84 Fed., 546; Ry. Co. v. Soderberg, 86 Fed., 49; Cattle Co. v. Chipman, 13 Utah, 454; 45 Pac., 348; Distrow v. Westchester, 45 N. Y. Supp., 376; Kellogg v. King, 114 Cal., 378; Murphy v. Lincoln, 63 Vt., 278; Hetterman v. Harness, 42 W. Va., 433; U. S. v. Guglard, 79 Fed., 21; Valentine v. Schreiber, 3 App. Div. (N. Y.), 235; Buskirk v. King, 72 Fed., 22; Edwards v. Haeger, 180 Ill., 99; Halpin v. McCune, 107 Ia., 494; Pollock v. Cleveland S. B. Co., 56 O. St., 655; Lazzell v. Garlow, 44 W. Va., 466; Haines v. Hall (Or.), 20 Pac., 831; Brown v. Salary, 37 Fla., 102; Barbee v. Shannon (Ind. Ty.), 40 S. W., 584; Harmon v. Landers (Tex.), 41 S. W., 378; Rakes v. Rustin Co. (Va.), 22 S. E., 498; Lanier v. Allison, 31 Fed., 100; Ry. Co. v. Hussey, 61 Fed., 231; McClosky v. Doherty (Ky.), 30 S. W., 649; Griffith v. Hilliard (Vt.), 25 A., 427; Parier v. Fetter, 20 Kan., 47; Duncan v. R. Co. (Ky.), 4 S. W., 228; Kirkendall v. Hunt, 4 Kan., 444; Smith v. Roc. (Vt.), 9 A., 551; Schneider v. Brown (Cal.), 24 Pac., 715; Troe v. Larson, 84 Ia., 649; Tautlinger v. Sullivan, 80 Ia., 218; Ladd v. Osborne, 73 Ia., 95; Bolton v. McShane, 67 Ia., 208; Ashurst v. McKenzie, 92 Ala., 484; Stroup v. Chalcraft, 52 Ill. App., 608; Ellis v. Wren, 84 Ky., 254; Hannon v. Landers (Tex.), 41 S. W., 378; Arnold v. Ry. Co., 55 N. Y., 661; McPhail v. Forney, 4 Wyo., 556; Kinney on Irrig., Secs. 329, 332, 321, 334, 330.)

An allegation that plaintiff is rightfully in possession is sufficient. (Schneider v. Brown (Cal.), 24 Pac., 715; Cramer v. Kester, 36 id., 415; Wilson v. Bodwell, 29 Fed., 674; 2 Beach Inj., Sec. 1142.)

If the possession of defendant is a mere interruption of the prior posession of plaintiff, the interruption will be remedied by injunction, if the right is clear and certain. (16 Ency. L. (2d Ed.), 364, 365; Lumber Co. v. L. & I. Co., 86 Fed., 528; Conway *ex parte*, 4 Ark., 302; Krecker v.

Shirey, 163 Pa. St., 534; Harrison v. Rowan, 4 Wash. C. C., 202.) Plaintiffs' claim is that they were in possession of the points in conflict previous to the possession of defendant, and were interrupted therein by the defendant, who wrongfully took possession of the same, and since maintained possession thereof.

The defendant did not exist until April 21, 1893, and its right cannot date from back of that time. The plaintiffs are entitled to the right of way from November 8, 1891, because they then took possession of the ditch, and remained in possession until ousted by the wrongful acts of defendant. The verbal grant of an easement followed by putting grantee in possession is a sufficient grant.

A water right can be conveyed only by deed sufficient to convey real estate. An attempt to convey by imperfect conveyance operates as an abandonment by the appropriator, and the purchaser's rights relate only to the date of his possession. A vendee of such right under a verbal contract or unrecorded deed obtains no benefit from the prior use by his grantor as against intermediate appropriators. (Kinney Ir., Secs. 253, 264; Salina Creek Ir. Co. v. Salina Stock Co. (Utah), 27 Pac., 578; Smith v. O'Hara, 43 Cal., 371.)

The abandonment by plaintiffs of the land below the points of conflict was not voluntary, but was compelled by the wrongful acts of defendant which prevented plaintiffs from complying with the United States statutes in the reclamation of the land. Hence, the defendant cannot be heard to complain of such abandonment to prevent injunction, especially as defendant proposes to maintain its ditch at the points of conflict, and prevent plaintiffs' use of water below such points.

The plaintiffs had not been guilty of laches; nor had the statute of limitations run. The plaintiffs have land below the points of conflict which can be irrigated from the ditch. The point of application of a water right may be changed, and in such case the only question is whether a prior appropriator would be injured by such change. Since plain-

tiffs were entitled to a certain amount of water, it is immaterial to defendant where the water might be applied, whether on lands owned by them or others, and, therefore, immaterial whether the rights of plaintiffs in Section 32 lapsed or not. Having acquired 160 acres of additional land capable of irrigation from the ditch, plaintiffs are entitled to sufficient water therefor, and as much more as will enable them to make their original appropriation available to the fullest extent. Even had no additional land been acquired, the plaintiffs would nevertheless have been entitled to an opportunity to make available their appropriation, and if for any reason in the future it should transpire that they cannot do so, then and not until then will their rights in the premises lapse.

An appropriator does not abandon his right when nonuse is caused by the wrongful acts of others, and the one at fault may not complain of an abandonment. (Kinney Ir., Sec. 150; id., 151; Moyer v. Preston, 6 Wyo., 308; 1 Pom. Eq., Secs. 397, 398, 399, 404.) An appropriator is not limited to the original places of application. (Kinney Ir., 152, 153, 154; Frank v. Hicks, 4 Wyo., 502; McPhail v. Forney, id., 556.) He may sell his appropriation to another, who may apply it on other lands. (Frank v. Hicks, supra; McPhail v. Forney, supra.) Defendant is not entitled to claim anything from the Pratt application until April 21, 1893.

*Gibson Clark,* for defendant in error.

A suit in equity may not be maintained to take the place of ejectment, and to try adverse claims to land which are wholly legal. An injunction will not lie to take property out of the possession of one party and put into the possession of another. A rule permitting that would deprive a defendant of his constitutional right to have the question of title and right of possession tried by a jury; and would violate the maxim that equity will not afford relief except where there is no adequate remedy at law. The defendant

having been in exclusive, open and actual possession ·of the property in controversy since July 5, 1894, using and occupying it for its canal, and adversely to plaintiff, the plaintiff could not at any time maintain an action of trespass, for the reason that such an action being for an injury to possession, there would be no trespass unless plaintiffs showed an actual or constructive possession at the time of the alleged injury. (Rafetto v. Fiori, 50 Cal., 363.)   The above considerations demonstrate that plaintiffs were not entitled to relief by injunction. (1 Pom. Eq. Jur., Secs. 177-252; 1 High on Inj., 8-355; 1 Spelling on Ex. Leg. Rem., 247-364; 2 id., 994-1018; 2 Beach Inj., 998-1142; 16 Ency. Law (2d Ed.), 364, note 5; Fenton v. Justice, 51 Cal., 529; Bishop v. Baisley, 41 Pac., 936; Clayton v. Shoemaker, 9 Atl., 635; LeRoy v. Wright, 15 Fed., Cases No. 8273; Fussel v. Gregg., 113 U. S., 550; Rilliam v. Ebbinhaus, 110 U. S., 568; Ellis v. Davis, 108 U. S., 485; Hipp v. Babin, 19 How., 271; Lewis v. Corks, 23 Wall., 466; Carney v. Hadley, 22 L. R. A., 233; Hillman v. Hurley, 82 Ky., 626; R. Co. v. R. Co., 21 N. J. Eq., 283; Caldwell v. Bush, 6 Wyo., 342.)

If the findings fail to show the existence of a material or essential fact to the case of the party sustaining the burden of proof, a judgment in favor of such party cannot be upheld. (8 Ency. Pl. & Pr., 933-943; 2 Thomp. on Tr., Secs. 2651, 2652, 2658; Elliott on App. Proc., Secs. 753, 754; Keber v. ·Hall, 117 Ind., 405; Mitchell v. Brawley, 140 Ind., 216; Hays v. Hosteller, 125 Ind., 60; Freedom v. Norris, 128 Ind., 377; Bull v. Bray, 26 Pac., 873.)

It is not alleged even inferentially that at the time the defendant took possession of the land in dispute the plaintiffs were in possession, or that the defendants ousted them from such possession. The defendant in its answer denied that plaintiff was ever at any time the owner of said premises, or entitled to the possession thereof, and alleged lawful ownership and possession in itself. Ownership was alleged. The question, therefore, to· be determined was the owner-

ship of the land in controversy. The ultimate facts to be found were, first, that the plaintiffs were at the time the defendant entered upon the land in question, and continuously since then, the owners of the same, and, second, that the defendant unlawfully and without right entered upon and took and maintained possession thereof. Unless these ultimate facts were found by the court, it would be impossible for any judgment to be rendered in favor of the plaintiffs.

It is certain that these ultimate facts essential to plaintiffs' case were not found by the trial court. Instead, the court found a mass of merely evidentiary facts, and from them, even if it were permissible to do so, it would be impossible to deduce with certainty these essential ultimate facts. But it is not permissible or proper for this court to determine the ultimate or inferential facts necessary to the plaintiffs' case. (Duff v. Duff, 12 Pac., 570; Elliott App. Proc., 753, 754; 8 Ency. Pl. & Pr., 941-943.)

The defendant succeeded equitably to all of the rights under the Platt application, and its rights are clearly prior to any rights of the plaintiffs. Upon the facts the findings should have held the defendant entitled to the points in controversy by priority over the plaintiffs. (The evidence was reviewed by counsel, and it was argued that it disclosed the inception of plaintiffs' rights to be subsequent to that of defendant.)

The court erred in not awarding defendant a judgment for costs. (R. S., Secs. 3789, 3791; 2 Bates Fed. Proc., 844; 5 Ency. Pl. & Pr., 184.) The discretion given to the court under Section 3792 is not arbitrary, but is to be exercised with reference to the general principles of equity and the special circumstances of each case. In equity as well as law the prevailing party is entitled to recover his costs; and there must appear sufficient reason to justify refusal to award them. (App. of Biddle, 8 Atl., 640; 5 Ency. Pl. & Pr., 186; 2 Bates Fed. Eq. Proc., 844; Clemont v. Wheeler, 25 N. H., 361; Lewis v. Yale, 4 Fla., 441; Hun-

ter v. Marlboro, 12 Fed. Cas., No. 6908; Fargo v. Ry. Co., 28 Fed., 906.)

CORN, CHIEF JUSTICE.

For the sake of convenience, the plaintiffs in error are spoken of as the plaintiffs and the defendant in error, The Lucerne Canal and Power Company, as the defendant, the action having been dismissed as to the other defendant. The controversy is concerning a right of way over a strip of ground now occupied by the Lucerne Canal of the defendant and through which defendant is conveying water from the North Platte River to irrigate certain of its lands.

The prayer of the plaintiffs' petition is that the defendant be restrained from flowing or using any water from the North Platte River in, or by means of, its said Lucerne Canal and from keeping possession of, or claiming any title or right of way to, any portion of the Burbank ditch (the name by which plaintiffs' ditch is known), or its right of way, at any and all places, or points, of conflict between it and the said Lucerne Canal; and to compel the defendant to yield up the control and possession of the said Burbank ditch and the said right of way to the plaintiffs at any and all such conflicting points and places.

The District Court denied the relief sought, dismissed the action and decreed that the plaintiffs and defendant each pay their own costs. Both the plaintiffs and defendant except to the decision of the court, the latter upon the ground that the court erred in refusing to give judgment in its favor for costs.

Prior to 1889 one Henry Burbank partially constructed what he recorded as the Platte Bluffs ditch upon a line substantially identical with the course now pursued by the ditch of plaintiffs. In 1889 Burbank left the country, the ditch being incomplete and water never having been turned into any part of it. Being indebted to George A. Draper, then a merchant in Cheyenne, he turned over to Draper his property and interests in that section, and Draper claims

that such transfer included the ditch, water right, etc., and he testifies that, to the best of his recollection, he received some instrument in the nature of a bill of sale from Burbank evidencing the transfer to him of the property, including the ditch and water right. But the instrument was not in evidence, no effort was made to prove its contents, the plaintiffs do not attempt to trace their title to Burbank and the Platte Bluffs ditch is conceded to have been abandoned and is treated by all the parties to this action as an abandoned ditch.

On November 6th, 1891, Draper filed, in the office of the State Engineer, an application to appropriate water from the North Platte River, through a ditch called the "Burbank" ditch, the course of the proposed ditch as described in the application, though being in the same locality and having the same general direction, not being substantially or approximately upon the same line as the old Platte Bluffs ditch of Burbank. Indeed, John Hunton, the surveyor who ran the line, and who drew the application for Draper, testifies that it did not cover, and was not intended to cover, the line of the latter, and that it did not approach very near to it, except at the point of controversy between plaintiffs and defendant, where it was some thirty to forty feet from it horizontally and about thirteen feet vertically above it. But there was subsequently filed in the Engineer's office a plat which it is claimed located it along the line of the Platte Bluffs ditch. Who filed this plat, or when it was filed, does not clearly appear from the evidence. But from the memoranda in the Engineer's office it seems to have been filed in pursuance of the Draper application and, in view of the file marks upon it in connection with what was shown to be the practice of the office in such matters, it was perhaps fair to infer that it was filed not longer, or not much longer, than six months from the time of the filing of the Draper application on November 6th, 1891. And the court below, in its written findings, found that it was filed on or about May 6th, 1892, as part of the Draper application of Novem-

ber 6th, 1891, and that it covered in part, and was intended to cover in part, the line of the Platte Bluffs ditch; but the court did not find what part it covered or was intended to cover. The law as it stood at the time of the transaction did not require a plat to be filed with the application, but permitted it to be filed within six months afterwards.

Subsequent to the filing of this application, Draper sold to Alexander Rutherford all his title and interest in this so-called Burbank ditch, Rutherford and members of his family, the plaintiffs in this action, having in the meantime acquired possession of certain lands along its course by entry made under the homestead and desert land laws of the United States. And the plaintiffs base their rights in this action on this purchase from Draper. Rutherford claims, and so testifies, that he bought from Draper on November 8th, 1891. But all the evidence tending to show that he made the purchase prior to February 17th, 1893, is of very doubtful character and much of it is open to very grave suspicion. In support of his statement, he introduced in evidence his check to Draper for seventy-five dollars, which he stated was the first payment on the purchase price of three hundred and twenty-five dollars. This check was dated November 8th, 1891, and he also introduced in evidence a receipt of the same date purporting to be signed by Draper and reciting the receipt of that amount "in part payment for the Burbank ditch." The exhibits themselves, instead of a copy or transcript, under our practice, are before us in this court, and it requires only a slight examination of this check to show conclusively that it was dated November 5th, the five having been carefully converted into an eight; and the stamp of the bank shows that it was paid on November 5th. There was evidence tending to show that the signature to the receipt was not Draper's at all, though Draper himself thought it was. Rutherford testified in detail as to the giving of the check and receipt; that it was at the desk at the back part of Draper's store, who was then in the hardware business in Cheyenne; that the store was open

for business and others going in and out, and that he was about the streets on that day, and that the banks and other business houses in town seemed to be open for business. And yet the evidence showed that the 8th of November was Sunday, upon which day banks, stores and other like business places were notoriously and invariably kept closed.

The manufacturing of evidence in support of a claim does not necessarily prove the claim to be fraudulent. But November 5th, the day the check was given, was the day before Draper made his application and before he had any ownership or interest in any ditch named the Burbank. There is no intimation anywhere in the evidence that the application was made as a result of or with a view to or in connection with the sale to Rutherford. But Rutherford testifies that before he paid the money to Draper they went together and examined the records in the office of the State Engineer, and he found that Draper had some claim and right to the ditch. As Draper's application was not filed until November 6th, it must be inferred that such examination was after that time. As it is established by the evidence that on November 5th Rutherford did purchase from Draper some improvements and the latter did relinquish a timber culture entry for his benefit, and as Draper testifies that Rutherford always paid by check so far as he can recall, it seems probable the check introduced in evidence was in payment for the improvements and had no connection in any way with the sale of the ditch. And if so, the apocryphal receipt of November 8th (Sunday), in which is recited a payment on the ditch, is left suspended without any support whatever. Moreover, John Hunton, who ran the line of the Burbank ditch upon which Draper's application was based, who wrote the application and who was interested with Draper in the matter, testifies that Rutherford never claimed in his presence to own the Burbank ditch prior to February 23d, 1893; that on that day Rutherford told him he had bought it from Draper. And Rutherford admits that he never told anyone he owned the

ditch prior to the execution of the bill of sale by Draper. And, although the Lucerne Canal proper had made a preliminary survey in the early part of 1892 and, in October, 1892, had made another survey finally locating the canal along the line where it was subsequently constructed, and which included the points in controversy in this case, and although they had cross-sectioned the line in February, 1893, preparatory to the construction of the canal, Rutherford having full knowledge of their movements, yet, as he admits, he never notified them in any way that they were interfering with his right of way until in March, 1893, after he had obtained the bill of sale from Draper.

The plaintiffs, in 1891, had obtained a possessory right under the laws of the United States to lands lying under the old Platte Bluffs ditch and, in 1892, had done some slight work in cleaning out portions of the ditch. In November, 1892, they also had a survey made, but only of the upper portion and entirely west of the points of conflict in this case. The evidence indicates very clearly that at this time the plaintiffs were proposing to provide a ditch to convey water to their lands, but, until some time in February, 1893, when they had a survey made of the entire line, the evidence is very slight and unsatisfactory that they made any claim to ownership of the Draper appropriation or claimed any superior or exclusive right to the line occupied by the abandoned Platte Bluffs ditch, or any ownership of the right of way at the points of conflict.

In the meantime, about the 1st of April, 1892, James H. Pratt, or the Pratt & Ferris Cattle Company, had the line of the Lucerne Canal surveyed and marked by stakes. This line included and covered the points of conflict now in controversy and the canal was subsequently constructed along this line practically without change. In the following October the line was cross-sectioned, work was begun some time prior to the 13th of December in the same year, and diligently prosecuted until the water was finally turned in about the 5th of July, 1894. On the 21st day of February,

1893, James H. Pratt filed an application to divert water through a ditch or canal described in the application as the Lucerne Canal & Power Company, and on April 21st, 1893, the certificate of incorporation of the Lucerne Canal & Power Company was filed, Pratt being one of the incorporators. In the articles the permit is described and the object and purpose of the incorporation stated to be to utilize such permit.

Pratt never executed any conveyance of this water right to the company and, so far as the evidence shows, never even verbally sold, gave or in any way transferred it to them. The plaintiffs insist that the company, therefore, are not shown to be the owners of any water right, have no occasion for any ditch or right of way, and have no standing in court whatever in this case. But we look upon the omission as unimportant and as, at most, a mere irregularity. Pratt was a mere trustee. He held, at most, the mere legal title. The purpose for which the permit was obtained, and that it was utilized as intended, are clearly shown in the application itself, in the articles of incorporation and in the acts of all the parties to the transaction. The State, which confers the right to appropriate, has not complained or shown any disposition to declare a forfeiture because Pratt has not in person complied with the terms of his permit by the construction of the proposed canal within the time limited, but has acquiesced in the method by which he and his associates utilized his appropriation. That the mere legal title rests in Pratt as between him and the company is not a circumstance of which the plaintiffs can take any advantage.

In November, 1892, the plaintiffs had made a survey of the upper end of their ditch, and some time in February, 1893, they made a survey of the entire length of the line of the abandoned Platte Bluffs ditch, including the points of conflict. Prior to this, in October, 1892, the defendant had permanently located its line over the points of conflict, but while its work was progressing on other parts, it had done no work at the points of conflict when the February

survey of plaintiffs was made. But in March work was begun at these points and was prosecuted with such diligence along the whole line that the canal was completed and water conveyed through it early in July, 1894. It appears, also, that the defendant in June, 1894, complied with the provisions of the statutes of the United States with reference to obtaining a right of way over the public lands, and that, in December, the map filed as a part of the proceedings was approved by the Secretary of the Interior.

Certain of the lands of plaintiffs, proposed to be irrigated by means of their ditch, lie entirely above and to the west of the points of conflict. Their ditch was completed and water conveyed through it in 1896 to these lands, and they were still so irrigated at the time of the trial of this cause. In the summer of 1893 and the following winter the plaintiffs attempted to construct their ditch, at points where the conflict occurred, to convey water to their lands lying below and to the east of the conflict, in Section 32, Township 26, Range 63, but were unable to do so by reason of the fact that the strip of ground in dispute was already occupied by the Lucerne Canal and in the possession of the defendant. Subsequently, and prior to July 17, 1899, the plaintiffs abandoned any attempt to irrigate their lands in Section 32, relinquished all claim to them and they reverted to the government of the United States.

Upon the evidence, thus recited at some length, we think it is at least doubtful if the plaintiffs acquired any priority over the defendant in the right of way in controversy. The court below found, however, that the plaintiffs did acquire such priority, and that the construction of the canal of defendants at the points of conflict was in violation of the rights of the plaintiffs, but decided that the abandonment and relinquishment of the lands, below the points of conflict, operated as an abandonment of so much of the water as was required for the irrigation of such lands and, as against the defendant, of so much of their right of way as was to be used by them only for the purpose of conveying

the water to such abandoned lands, which comprehended all the right of way in controversy, and that the plaintiffs were not entitled to the relief sought. And, accepting the finding of the District Court, which we think is the view most favorable to the plaintiffs that could reasonably be taken under the evidence, we think it was impossible for the court to escape the conclusion reached. Conceding, therefore, that the plaintiffs were entitled to the right of way and that their failure and inability to convey water to their lands in Section 32 was solely due to the unauthorized acts of the defendant, we think it is apparent that, by the abandonment of such lands, they also abandoned the appropriation of water for the purpose of their irrigation and, at the same time, any right of way for the conveyance of the water to such lands. An action for damages would be a complete and adequate remedy for the alleged injury. It is not a case of repeated and continuing trespasses upon the possession of plaintiffs, but the injury was complete. Moreover, the plaintiffs having abandoned their lands and their appurtenant water right, neither an injunction against the defendant nor a restoration to the plaintiffs of the disputed right of way would afford any relief to the plaintiffs, as it would not restore to them either their lands or their water right. The evidence shows that, by the canal of the defendant, four thousand two hundred acres of land, otherwise valueless, have been reclaimed and made productive and now supply homes for from eighty to a hundred persons. We cannot conceive that a court of equity would, by its decree, shut off the water from these lands, relegate them to their desert condition and destroy the homes that depend upon this canal for their existence, in order to restore to plaintiffs a right of way which, even though wrongfully taken from them in the first place, they can no longer utilize in compliance with the conditions under which it was obtained and held. It is true that in 1899, prior to the institution of this suit, but some three years after the relinquishment of their lands in Section 32, the plaintiffs

obtained title to other lands in that vicinity and which, as we infer from the evidence, can only be reclaimed by water brought over the right of way in controversy. But upon no principle can the subsequent acquisition of these lands, in the absence of any proof that such acquisition was contemplated at the time of the appropriation, be held to restore the appropriation or right of way of plaintiffs forfeited in 1896. The obtaining of a water right and right of way for the reclamation of such after acquired lands presents a new question entirely outside of the issues in this case.

The defendant complains that the court refused to give judgment in its favor for costs. But we think this suit comes fairly within the provisions of Section 3792, Revised Statutes, which authorizes the court to award and tax costs, and apportion them between the parties, as it may adjudge to be right and equitable. And we cannot say that its disposal of the question was such an abuse of discretion as would justify the interference of this court.

The judgment will be affirmed.              *Affirmed.*

POTTER, J., concurs.